On the first day of the Superior Court of Law, held for the District of Hillsborough, on the 6th day of April, 1800, by his Honor SAMUEL JOHNSTON, Esq. Duffy, on an affidavit, stating the trial, conviction, and sentence passed by the Court of Person, on the said slave, Sue, moved for and obtained writs of supersedeas, certiorari, and habeascorpus, directed to the sheriff and justices of the said county, in consequence of which the sheriff of Person brought up the said slave to the Superior Court, together with the record of her trial, conviction, and of the sentence passed on her; and Jones, Solicitor-General for the State, moved that she should be sent back to receive the sentence of the county court, which was opposed by Duffy for the prisoner, who contended that the county court of Person had no authority to pass sentence of death on the prisoner, the crime of which she was convicted being one of such a nature as was not by the laws of the land punishable with death, and he cited Iredell's Revisal, Laws of North Carolina, Act of 1794, ch. 11, sec. 1, which enacts, "That it shall hereafter be the sole duty of the jury sworn on the trial of any slave or slaves to give a verdict of guilty or not guilty on the evidence submitted to them by the court, and on the verdict so given in by the jury, it shall be the duty of the county court, when sitting on the trial of any slave or slaves, or of three justices, when they shall be sitting on any such trial, to pass judgment and sentence on the slave or slaves so tried before them, agreeable to the verdict of the jury and the laws of the country." This act he contended, gave the court no power to inflict any other or more severe punishment on a slave when convicted of an offense than by the laws of the country a free man would be subject to on conviction of the offense of the same nature; that the offense of which the prisoner was convicted was such a one as if committed by a free man would not subject him to the loss of his life; that the Legislature had no intention to punish slaves in a more sanguinary manner than free men convicted of the same *Page 237 
offense; and that a supposition to the contrary was a charge (279) against the Legislature of violating the laws of humanity.
It was contended by Jones, Solicitor-General for the State, that there was no doubt but that the General Assembly intended to make a difference in the trials of slaves and of free men; that this intention was apparent and obvious, by having reference to the several acts of the Legislature prescribing the mode and regulating the trials of slaves, particularly one passed in the year 1741, Iredell's Rev., 94, ch. xxiv, entitled "An act respecting servants and slaves," in the 48th section of which act it is enacted "That every slave committing such offense (meaning conspiring to rebel, make insurrection etc., as mentioned in the 47th section), or any other crime or misdemeanor, shall forthwith be committed by any justice of the peace to the common jail of the county within which the said offense shall be committed, there to be safely kept; and that the sheriff of such county, upon such commitment, shall forthwith certify the same to any justice in the commission of the said court, for the time being, resident in the county, who is thereupon required and directed to issue a summons for two or more justices of the said court and four freeholders, such as shall have slaves in the said county; which said three justices and four freeholders, owners of slaves, are hereby empowered and required, upon oath, to try all manner of crimes and offenses that shall be committed by any slave or slaves at the courthouse of the county, and to take for evidence the confession of the offender, the oath of one or more creditable witnesses, or such testimony of negroes, mulattoes or Indians, bond or free, with pregnant circumstances, as to them shall seem convincing, without the solemnity of a jury; and the offender being then found guilty, to pass such judgment upon such offender, according to their discretion, as the nature of the crime or offense shall require; and on such judgment to award execution." He contended that the subsequent acts of the Legislature, respecting the trials of slaves, by no means restricted the discretionary power which the Act of 1741 gave to the county courts in passing such judgment upon slaves as the nature of the crime or offense of which they (280) might be convicted required; that the expression contained in the Act of 1794, declaring it to be the duty of the county court sitting on the trial of any slave or slaves to pass judgment on the slave or slaves so tried before them, agreeable to the verdict of the jury and the laws of the country, means those laws only which have been passed to regulate the trial of slaves, not the laws of the country the benefit of a trial by which free men claim and are allowed; that the public good frequently required that slaves should be punished by death for offenses which, if committed by free men, would not be so dangerous in their consequences, *Page 238 
and therefor not in them deserving so severe a punishment; that the great misfortune of having slaves among us cannot now be remedied, and the Legislature, from the laws they have enacted on the subject, appear to be impressed with the necessity of punishing crimes and offenses committed by them with great severity; which seems to be the reason why the punishment of offenses committed by them is left in the discretion of the court before whom they are tried, whom the Legislature thought would be competent to decide how far the public good might require that particular offenses should be punished with more severity than others; that the county court, having exercised the discretion which the Act of 1741 gave them, by sentencing the prisoner to be punished with death; that the Court ought to presume it done for the public welfare and not reverse their judgment and sentence.
This case being wholly new, his Honor, Judge JOHNSTON, desired that it should be adjourned to the meeting of the Judges at this term, when it came on to be argued by Jones, Solicitor-General for the State, and Duffy for the prisoner, both of whom argued as in the Superior Court of Hillsborough, and cited the same Acts of Assembly, and which renders repetition of them here unnecessary.*
* The reporter was present and took notes of this case when argued in Hillsboro Superior Court, and the arguments being nearly the same in both Courts, he has given them as made in the former.
It does not appear to me, from any construction which I can make of the laws of this State respecting the punishment of slaves, that they are made liable to be punished with death in any case where the like punishment is not by law to be inflicted on a free man, except only in the cases mentioned in the 47th section of the act concerning servants and slaves, passed in the year 1741.
I cannot prevail on myself to adjudge in any case that a crime shall be punished with death unless there is an express law for that purpose, and am of opinion that no implication, however obvious can be admitted in such case, and that the discretion allowed in these cases must apply to thequantum or measure, not the degree of punishment.
Therefore, it is my opinion that the judgment be reversed, and that the prisoner be remanded to receive such other punishment, short of death, as the Court who tried her shall think just, so that the same be warranted by the laws and Constitution of the State.